IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CRIMINAL NUMBER 21-32 |
| v. | : | |
| | : | |
| | : | |
| ROBERT COSTELLO | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

The presentence report prepared in connection with this sentencing concludes that the applicable advisory guideline range is 97-121 months. While the offenses to which Mr. Costello pleaded guilty to are serious, the advisory guideline range is based on an adjusted offense level which is 11 levels above the base offense level. See Presentence Report at ¶¶ 23 (base offense level) and 32 (adjusted offense level). Many of the enhancements applied under U.S.S.G. § 2G2.2 are based on specific offense characteristics which are inherent in offenses of this kind, such as use of a computer, depiction of sex acts (inherent in pornography) with minors and depictions of minors (inherent in child pornography).

Without these enhancements, Mr. Costello's total offense level, after acceptance of responsibility would be 17 with a criminal history category of I which yields an advisory guideline range of 24-30 months. The enhancements applied to the base offense level increase William's sentencing exposure by at least 6 years. Even when considering that the statutory mandatory minimum sentence is 60 months, the enhancements elevate Mr. Costello's exposure by 37-61 months. Under the circumstances of this case, the defense requests that this Court apply a impose a sentence at the bottom of the guideline range which takes into consideration the guideline policy arguments and 18 U.S.C. § 3553(a) factors contained herein.

Cases such as these present the unique and difficult task of achieving the balance between retribution and rehabilitation in the face of universally negative public sentiment. Mandatory minimums and triple digit guideline ranges contribute to the imposition of sentences which mirror those imposed on career offenders. Given the facts of this case, were this Court to apply a sentence above the range as is requested by the Government, the resulting upward variance would be based on facts already taken into consideration in the advisory guideline range. The additional facts regarding the substance of the chat were investigated and proved to be puffing on the part of Mr. Costello as evidenced by the fact that no additional levels for added for contact offenses.

The Court is aware of its discretion in sentencing beginning with the application of the sentencing guidelines and ending with the application of the 18 U.S.C. § 3553(a) factors. However, that discretion is not a cure-all when the starting point is artificially inflated. It is respectfully submitted that the advisory sentencing guideline range contained in the presentence report is both excessive and incorrect.

This Court has vast discretion to account for the § 3553(a) factors in fashioning a sentence irrespective of the advisory guideline range. As discussed in the opening paragraphs of this memorandum, there are several enhancements which are applied to the base offense level of 22 which elevate it to 40. See Presentence Report at ¶¶ 23-27. These enhancements include, inter alia, 2 points for use of a computer pursuant to U.S.S.G. § 2G2.2(b)(6), 2 points for materials involving prepubescent minors pursuant to U.S.S.G. § 2G2.2(b)(2), 4 points for materials depicting sadomasochism or violence pursuant to U.S.S.G. § 2G2.2(b)(4), 5 levels based on the number of images pursuant to U.S.S.G. § 2G2.2(b)(7)(D).

In determining the appropriateness of the advisory guideline range and the Government's request for an upward variance, the increases already apply bear scrutiny. The two-level increase for use of a computer under §§ 2G2.1(b)(6)(B) and 2G2.2(b)(6) and the five-level increase for the number of images under § 2G2.2(b)(7)(D) are regarded as outdated and in need of revision. Specifically, in February 2013, the Sentencing Commission released a report to Congress on the child pornography guidelines for non-production offenders. See U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses (2012) [*"Child Pornography Report"*].[1] The Commission explained that it compiled the report in large part due to the increasing rate of below-guideline sentences for offenders sentenced under U.S.S.G. § 2G2.2, pursuant to its statutory duty to "consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions," id. at ii, and because "as a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." Id. at ii, 323.

The Commission explained that because the enhancements for computer use and type and volume of images "now apply to most offenders," the guideline "fail[s] to differentiate among offenders in terms of their culpability." Id. at iii, xi; id. at 209, 323. It explained that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely circulated." Id. at 6. Because "sentencing enhancements that originally were intended to provide additional,

---

[1] The report can be found here: https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses.

proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," id. at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors,"[2] id. at 323. The cumulative enhancements addressing the content and volume of images possessed, "in addition to base offense levels of 18 or 22, result[] in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior." Id.

In fact, many Judges, in this District and Circuit, have declined to apply the use of computer enhancement. See United States v. D.G.H., Criminal Number 12-141 (Stengel, J); United States v. J.D.Z.J., Criminal Number 15-12 (Sanchez. J.); United States v. T.M., Criminal Number 15-131 (Goldberg, J.) (order on presentence report objections docketed at document number 58); United States v. Husmann, 765 F.3d 169, 172 (3d Cir. 2014) (noting that the Honorable Lawrence F. Stengel of the United States District Court for the Eastern District of Pennsylvania "declined to apply a two-level enhancement under U.S.S.G. § 2G2.2(b)(6) for the use of a computer, since virtually all child pornography offenders use computers"); United States v. Crayton, 619 F. App'x 114, 115 (3d Cir. 2015) (noting that the Honorable Cathy Bissoon of the United States District Court for the Western District of Pennsylvania concluded that "the two-level computer enhancement was unreasonable because it applied in almost every child pornography case"); United States v. Maguire, 436 Fed. App'x 74, 78 (3rd Cir. 2011) (noting that the Honorable Faith S. Hochberg of the United States District Court of New Jersey declined to apply the enhancement because she viewed it "as being generally applicable to all child

---

[2] According to the United States Sentencing Commission, during fiscal year 2020, the use of a computer enhancement was applied in 94.2% of cases involving application of U.S.S.G. 2G2.2, See U.S. Sent'g Comm'n, Use of Guidelines and Specific Offense Characteristics Guideline Calculation Based (FY2020) (accessible at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/Use_of_SOC_Guideline_Based.pdf) at page 43.

pornography cases"). In fact, one district court has remarked that "[c]omputer use is now so widespread that this enhancement '**is a little like penalizing speeding, but then adding an extra penalty if a car is involved.**'" United States v. Abraham, 944 F. Supp. 2d 723, 731 (D. Neb. 2013) (quoting United States v. Kelly, 868 F. Supp. 2d 1202, 1209 (D.N.M. 2012) (emphasis added).

The Commission concluded that "[t]he current sentencing scheme in § 2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual dangerousness." Id. at xx; see also id. at 321. It recommends that the specific offense characteristics related to the types and volume of images and use of a computer "be updated to account more meaningfully for the current spectrum of offense behavior regarding the nature of images, the volume of images, and other aspects of an offender's collecting behavior reflecting his culpability (e.g., the extent to which an offender catalogued his child pornography collection by topics such as age, gender, or type of sexual activity depicted; the duration of an offender's collecting behavior; the number of unique, as opposed to duplicate, images possessed by an offender)," and "to reflect offenders' use of modern computer and Internet technologies." Id. at xviii-xix, 322-23.

In June 2021, the Sentencing Commission revisited the findings of the 2012 report and issued an updated report which expanded on the findings of the 2012 report. See U.S. Sent'g Comm'n, Federal Sentencing of Child Pornography Non-Production Offenses (2021) (accessible at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf). In this report, the Commission reiterated its amendment recommendations and the rationale for these recommendations and noted that the

data continued to show the same trends which they argued supported amendment of the guidelines. The report further noted that in FY2019, the median number of images involved in child pornography offenses was 4,265 and nearly every offense (99.4%) included prepubescent victims. Id. at 4.

In this case, many of the enhancements applied to Mr. Costello apply to most offenders and do not distinguish his actions in this case from the vast majority of similarly-situated offenders. Likewise, the sheer number of images that can be readily downloaded through zip files and Dropboxes easily increases the offense level by five levels under U.S.S.G. § 2G2.2(b)(7)(D). Given the FY2019 data included in the most recent Commission report and further given that the 5 level increase is triggered by 600 or more images, it is clear that this increase fails to distinguish between offenders. To be clear, Mr. Costello does not seek to downplay the seriousness of his crimes; rather, he respectfully requests only that he be sentenced in accordance with the policy considerations addressed by the United States Sentencing Commission in the 2012 Report and as reinforced by the FY2020 Use of Guidelines report.

Turning to the § 3553(a) factors, the defense urges the Court to take into consideration Mr. Costello's personal history and characteristics. Perhaps the most difficult part of this case is reconciling how incongruous Mr. Costello's personal and professional history is with the offense. Nothing in Mr. Costello's background could have given anyone any indication that an offense such as this could have possibly been a part of his narrative. This dichotomy, and the breakdown in mores and values instilled in him by his family, professional experience and history of law-abiding behavior is mind boggling. Mr. Costello took pride in his job and worked hard to rise through the ranks of the New York City Department of Probation.

In internalizing this experience, Mr. Costello has struggled with the shame of his actions and the shame his actions have visited upon him with his family, extended family and friends. The conduct which led him before this Court is shocking to strangers and downright earth shattering to those who know him. The fact that he continues to enjoy the support of family and friends is a testament to his true character. In fact, many of these people who have continued to support him have submitted letters on his behalf. See Letters of Support (annexed hereto as Exhibit A). It is this network and the true nature of his background that will solidify the rehabilitative nature of any sentence this Court may impose.

Given the broad range of discretion which the Court can apply, the § 3553(a) factors become especially relevant. Mr. Costello's background provides hope for rehabilitation. Mr. Costello is amenable to continued vocational training while in custody and would benefit from treatment in the form of counseling to deal with the conduct which brings him before this Court.

All of Mr. Costello personal history and characteristics and work history warrant consideration by the Court. Accordingly, the defense requests that this Court impose a sentence that does not exceed the bottom of the advisory guideline range. Based on the increases to the base offense level, and a balancing of the § 3553(a) factors, in particular Mr. Costello's personal history and characteristics, a sentence above the bottom of the advisory guideline range would be greater than necessary to achieve all of the sentencing goals that Court must take into consideration when imposing a sentence.

Lastly, given that Mr. Costello is indigent, the Court should not impose a JVTA assessment as discussed in paragraph 85 of the presentence report. Furthermore, the Court should not impose any restitution since the Government and requesting parties have not submitted any proof of **actual** loss nor proximate harm. While this argument does not seek to diminish the harm

done to those requesting the restitution, these are factors to be considered by the Court. It is also relevant that the defendant is indigent and unlikely to every pay any money towards restitution.

        Respectfully submitted,

        MARIA A. PEDRAZA
        Assistant Federal Defender

## CERTIFICATE OF SERVICE

      I, Maria A. Pedraza, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have filed under seal and served a copy of Defendant's Sentencing Memorandum via hand delivery upon Francis A. Weber, Assistant United States Attorney to his office located at 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.

                                                  MARIA A. PEDRAZA
                                                  Assistant Federal Defender

DATE:        November 16, 2021